uHon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERATHON MEDICAL, INC., a
Washington Corporation,

           Plaintiff,

      v.

CARESTREAM MEDICAL, LTD, a BC
Corporation; and CARESTREAM
MEDICAL, ULC, a BC Unlimited
Liability Company, d/b/a
CARESTREAM AMERICA,

           Defendants.

No. 2:16-cv-00280-JCC

**DEFENDANT CARESTREAM
MEDICAL, ULC'S REPLY IN
SUPPORT OF MOTION TO STAY
OR, IN THE ALTERNATIVE,
DISMISS ON THE GROUND OF
*FORUM NON CONVENIENS***

NOTED ON MOTION CALENDAR:
**April 29, 2016**

ORAL ARGUMENT REQUESTED

## I.  INTRODUCTION

Defendant CAREstream[1] brought this motion for the stated and sole purpose of consolidating this case with a pending action in Canada (***British Columbia Action I***), which involves the same parties and the same subject matter (the enforceability of the Non-Competition Clause), to allow a Canadian court to rule on whether the injunctive relief Verathon seeks, which would have effect and be enforced only in Canada, is consistent with Canadian law and public policy.  Verathon can hardly contest that the enforceability of the

---

[1] Terms defined in CAREstream's Motion to Stay or, in the Alternative, Dismiss on the Ground of *Forum Non Conveniens*, have the same meaning in this Reply.

DEFENDANT CARESTREAM'SREPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 1



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1    injunction it seeks ultimately is an issue for a Canadian court: it initiated ***British Columbia***

2    ***Action II*** for the admitted purpose of securing a ruling on that issue from a Canadian court

3    to ensure the enforceability in British Columbia of any relief obtained in this Court.

4         CAREstream's motion did not include any request that this Court stay or adjourn the

5    status conference then scheduled for April 12 or any other case events.  Nor did the filing of

6    this motion trigger any rule or procedure that necessitated any delay or adjournment of any

7    otherwise applicable deadlines.  To the contrary, the case has continued: counsel conducted

8    a discovery conference and Verathon could have served discovery requests on CAREstream

9    (it has not done so).  Verathon also could have filed a motion for a preliminary injunction,

10    or taken any number of other steps to advance this case, but apparently chose not to.

11    Verathon's accusation that CAREstream brought this motion as a delay tactic is

12    unsupported and untrue.

13         The other aspersions Verathon casts against CAREstream's motion likewise are

14    without merit, and provide no support for the sanctions it invites this Court to impose.  As

15    just one example, contrary to Verathon's oft-repeated claim, CAREstream's motion did

16    address the Distribution Agreement's forum-selection and choice-of-law terms.  *See* Motion

17    at 10 & fn. 5.  CAREstream also highlighted that the forum-selection clause is ***non-***

18    ***exclusive*** and does not preclude suits in other jurisdictions.  *See id.* at fn. 5.  Verathon, for

19    its part, failed to address the non-exclusive nature of the forum selection clause in its

20    Opposition – a crucial fact that renders inapplicable much of the legal authority it relies on.

21         Verathon's Opposition, when stripped of rhetoric and insults, actually says very

22    little.  Verathon's response on the merits is that the *forum non conveniens* doctrine does not

23    apply (it does, because the forum selection clause is *non-exclusive)* and that none of the

24    *Colorado River* factors favor abstention (all either do or are neutral).  CAREstream's

25    motion should be granted and Verathon's unwarranted and improper request that this Court

26    impose sanctions against CAREstream should be denied.

---

DEFENDANT CARESTREAM'S REPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 2

**YARMUTH WILSDON** PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

## II.   VERATHON'S OPPOSITION MISSTATES THE FACTS AND MISCHARACTERIZES CARESTREAM'S MOTION

### A.   CAREstream's Motion Did Not Request or Effect any Delay of this Case.

Verathon baldly accuses CAREstream of bringing this motion as a "stall tactic" and "flagrant attempt to delay this case."  Opposition at 2, 20.  And Verathon further claims that the motion did cause delay – citing as evidence the fact that on April 11, four days after CAREstream filed the instant motion, the Court struck a status conference previously scheduled for April 12.  *Id.*  That is, Verathon faults CAREstream for this Court's adjournment of a status conference.  Verathon overlooks that (1) CAREstream never asked this court to take any such action[2], and (2) this Court's order vacating the conference states that the Court did so "on its own motion and in the interest of judicial economy." (Dkt. # 23).

If any party has delayed this case and "run the clock" on the Non-Competition Clause, which the parties agree terminates on December 31, 2016, it was Verathon.   After telling CAREstream it would file a motion for temporary restraining order by February 19, 2016, Verathon waited until March 14, 2016, to do so.  Declaration of Scott T. Wilsdon ("Wilsdon Decl.") ¶¶ 3, 7.  And, notwithstanding the fact this case has continued during the pendency of this motion, Verathon has failed to advance the case.  On April 19, 2016, counsel conducted a discovery conference pursuant to Fed. R. Civ. Proc. 26(f).  Wilsdon Decl. ¶ 4.  At the conference, Verathon's counsel stated that it intended to take discovery from CAREstream.  To date, it has not done so.  *Id.*  Nor has Verathon sought to advance the case by motion practice – for example, by filing a motion for preliminary injunction.

---

[2]  The only mention of the status conference in CAREstream's motion is in a footnote in which CAREstream notes the fact that the conference had been scheduled.  *See* Motion, fn. 3.

DEFENDANT CARESTREAM'S REPLY IN SUPPORT OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 3



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

2

**B.     CAREstream's Motion Addressed the Forum-Selection Clause in the Distribution Agreement.**

3     CAREstream's motion not only cited the Distribution Agreement's forum-selection

4   clause, it quoted that provision. *See* Motion at 10 & fn. 5. Verathon simply is wrong in

5   asserting (repeatedly) that CAREstream "ignored" or "omitted" this provision. Opposition

6   at 3, 8. CAREstream's motion also addressed the *non-exclusive* nature of the parties'

7   forum-selection clause, observing it did not preclude jurisdiction in another forum. *Id.*

8   Verathon nowhere addresses this critical fact and relies heavily on cases involving

9   *mandatory* forum selection clauses. Verathon's omission of any discussion about the non-

10   exclusive nature of the forum selection clause is particularly striking given its repeated,

11   unfounded allegations of "intellectual dishonesty" against CAREstream.

12

13

**C.     Verathon Misrepresents the Status and Events of the British Columbia Proceedings.**

14     Verathon also misrepresents details about the British Columbia actions. *First*,

15   Verathon's suggestion that it chose to voluntarily dismiss its application for an injunction in

16   *British Columbia Action II* in light of this Court's denial of its motion for temporary

17   restraining order is belied by the fact that, five days *after* Verathon's motion for a

18   temporary restraining order had been denied by this Court, Verathon insisted that

19   CAREstream respond to Verathon's application for injunctive relief in *British Columbia*

20   *Action II*. *Id.* Declaration of Robert James King ¶ 7, Exs. D & E.[3] Indeed, Verathon did

21   not concede that its application should be dismissed until March 30, two weeks *after* this

22   Court denied the motion for a temporary restraining order. King Decl. ¶ 9.

23

24

25

26

---

[3] The Court in ***British Columbia Action II*** expressly reserved the issue of costs, thus preserving CAREstream's claim to "special costs" arising from Verathon's insistence that the case go forward even after this Court's denial of Verathon's motion for a temporary restraining order.

DEFENDANT CARESTREAM'S REPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 4

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

*Second*, Verathon suggests that **British Columbia Action I** has been formally stayed.  That is not the case.  **British Columbia Action I** is an extant action.  To avoid the unnecessary expense of duplicative  motion practice, CAREstream proposed that (1) the deadline for Verathon to respond to CAREstream's Amended Notice of Civil Claim be extended pending the outcome of this motion, and (2) Verathon hold its motion to stay **British Columbia Action I** in abeyance pending resolution of the similar motion in the U.S. proceeding.  King Decl. ¶ 10.  Verathon accepted this proposal.  *Id.*  Avoiding duplicative proceedings is a central purpose of federal court abstention under *Colorado River*.

### III.   ARGUMENT

**A.      The Distribution Agreement's Forum-Selection Clause Does Not Preclude Litigation in other Forums.**

Verathon ignores entirely that the forum-selection clause in the Distribution Agreement is not exclusive – a point that CAREstream highlighted in its motion, because it has significant implications.  The forum-selection clause reads in relevant part:

> The parties agree to submit to the jurisdiction of the state and federal courts located in Seattle, Washington USA.

Distribution Agreement § 10.4.  As CAREstream's motion highlighted, because the forum-selection clause does not **mandate** jurisdiction and venue in Washington, it does not preclude the parties from litigating in another forum that has jurisdiction over the parties.  Motion at fn. 5.  As Verathon has admitted, the British Columbia Supreme Court is such a forum.  King Decl. ¶ 4.  Nowhere in its Opposition does Verathon contest that the forum-selection clause is non-exclusive.  For good reason:  that is the only plausible interpretation of the provision.

Under settled Ninth Circuit law, to be mandatory and thus preclude suit in another jurisdiction, "a [forum selection] clause must contain language that clearly designates a forum as the **exclusive** one."  *Northern California Dist. Council of Laborers v. Pittsburg-*

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   *Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) (emphasis supplied); *see also*

2   *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75,77 (9th Cir. 1987).  In *Pittsburg-*

3   *Des Moines Steel,* the Ninth Circuit found that a forum-selection clause providing that

4   arbitration awards "shall be enforceable by a petition to confirm an arbitration award filed

5   in the Superior Court of the City and County of San Francisco, State of California" did not

6   preclude litigation in another forum because the clause lacked language *requiring* suit in the

7   named forum.  Similarly, in *Hunt Wesson*, the Ninth Circuit held that a forum-selection

8   clause providing that the courts of Orange County, California "shall have jurisdiction over

9   the parties in any action" was not mandatory, because the contract did not specify that the

10  Orange County courts would have **exclusive** jurisdiction.  817 F.2d at 77.  As the Court

11  explained, a forum-selection clause that does not provide for the exclusive jurisdiction of a

12  court does not preclude litigation over the same subject matter in another court:

13       The language says nothing about the Orange County courts having **exclusive**
         jurisdiction.  The effect of the language is merely that the parties consent to the
14       jurisdiction of the Orange County courts. . . . Such consent to jurisdiction, however,
         does not mean that the same subject matter cannot be litigated in any other court.  In
15       other words, the forum selection clause in this case is permissive rather than
         mandatory."
16

17  *Id.* (emphasis supplied).

18       Here, as in *Pittsburgh-Des Moines* and *Hunt Wesson*, the forum-selection clause in

19  the Distribution Agreement contains no language mandating litigation in Washington;

20  rather, the parties merely agreed to "submit to the jurisdiction" of federal and state courts in

21  Seattle, Washington.  As in *Pittsburgh-Des Moines* and *Hunt Wesson*, the Distribution

22  Agreement's forum-selection clause precludes CAREstream (or Verathon) from contesting

23  jurisdiction in this court, but it does not preclude litigation in another forum.

24

25

26

DEFENDANT CARESTREAM'SREPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 6

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.     Where, as Here, a Forum-Selection Clause is Non-Exclusive, the Traditional *Forum Non Conveniens* Analysis Applies.**

Verathon wrongly argues that the forum-selection clause renders the doctrine of *forum non conveniens* inapplicable.  Verathon ignores that under the great weight of authority (including the case law it relies on) where, as here, a forum-selection clause is permissive, that exception is inapplicable and the traditional *forum non conveniens* analysis applies.  *See Lavera Skin Care N. America, Inc. v. Laverana GmbH & Co.*, 2014 WL 73398739, *5 (W.D. Wash. 2014) ("Where a forum-selection clause is instead permissive, the vast majority of courts that have addressed the issue have . . . applied the traditional *forum non conveniens* test.").

Verathon cites no case that supports the proposition that a permissive forum-selection clause precludes dismissal on *forum non conveniens* grounds.  Verathon curiously relies on *Magellan Real Estate Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1149 (D. Ariz. 2000), but that case supports CAREstream's position, not Verathon's.  In *Magellan*, the court first recognized, contrary to Verathon's argument, that "the standard approach to the issue of *forum non conveniens* is employed when a forum selection clause is merely permissive, rather than mandatory."  *Id.*  In the passage of *Magellan* Verathon quotes, the court addressed an exception to that general rule, which is not applicable here:  where the parties' chosen law mandates a particular venue.  *Id.*  As the court explained, this can occur when a statute mandates venue in a particular court, and the court offered as an example that "certain federal statutes such as the Jones Act mandate venue in the United States district courts."  *Id.*  The *Magellan* court **rejected** the argument that the parties' forum-selection clause and chosen law mandated a particular venue and conducted a traditional *forum non conveniens* analysis.  Verathon does not even attempt to argue that the parties' chosen law – Washington state – mandates venue in Washington.

**YARMUTH WILSON** PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    For the reasons discussed in CAREstream's motion, this Court has the discretion to

2    dismiss this case on grounds of *forum non conveniens*.

3    **C.    Verathon Misconstrues CAREstream's Arguments for Abstention.**

4    1.    The Cases are Parallel.

5    Relying on its say-so and the fact that not all of Verathon's claims in this case have

6    yet been brought in Canada, Verathon argues that this case and ***British Columbia Action I***

7    are not parallel.  Verathon overlooks that "[e]xact parallelism is not required; it is enough if

8    the two suits are substantially similar."  *Grammer, Inc. v. Custom Foam Sys., Ltd.*, 482 F.

9    Supp. 2d 853, 857 (E.D. Mich. 2007) (citing *Finova Capital Corp.*, 180 F.3d 898, 899 (7th

10   Cir. 1999)).  Here, as explained in CAREstream's motion, the parties are the same, and both

11   cases involve the same agreement (the Distribution Agreement).  As in *Grammer*, in light

12   of the common parties and subject matter, the cases are "substantially similar," even though

13   the claims are not identical.  This case thus stands in stark contrast to *Putz v. Golden*, 2012

14   WL 2565017, No. C10-0741JLR (W.D. Wash. July 2, 2012) – a case Verathon relies on –

15   in which neither of the parties to the U.S. litigation were parties to the foreign proceeding

16   and the foreign proceeding involved a wholly distinct transaction than the contract at issue

17   in the U.S. litigation.  Indeed, in *Putz*, the foreign litigation was not even active at the time

18   the defendant moved to stay.  2012 WL 2565017, at *8, *13.

19   2.    *Colorado River* factors favor abstention.

20   Relying principally on the forum-selection clause (while ignoring the non-exclusive

21   nature of that contractual term), Verathon contends that none of the *Colorado River* factors

22   favor abstention.  As explained in CAREstream's motion, all of the factors favor abstention

23   or are neutral as to its application to this case.

24   *Convenience of the Forums (Factor Two)*.  Verathon does not identify a single

25   potential witness who resides in this judicial district.  As explained in CAREstream's

26   motion, CAREstream's customers are likely witnesses in this case and they all reside in

DEFENDANT CARESTREAM'S REPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 8

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Canada. Motion at 8. Moreover, a key third-party witness in this case is the Canadian entity that succeeded CAREstream as Verathon's Canadian distributor, Canadian Hospital Specialties Ltd. ("CHS"). Notably, CHS currently sells products Verathon alleges are competitive and which Verathon, through this lawsuit, seeks to prevent CAREstream from selling under the Non-Competition Clause. *See* King Decl. Ex. E (CAREstream's response to Verathon's application for injunction in ***British Columbia Action II***), ¶ 13. CHS is thus likely to be a critical witness on the key issue of whether the products Verathon seeks to enjoin CAREstream from selling are in fact competitive with Verathon products.

Verathon simply misunderstands CAREstream's argument with respect to Canadian law. As explained in CAREstream's motion, because the injunction Verathon seeks would have effect only in Canada, its terms must ultimately comport with Canadian law and public policy. For that reason, CAREstream argued that the fact that Washington law governs the agreement should be given only minimal weight in assessing *Colorado River* factor 5, and that the Canadian law and policy concerns should be given equal, if not greater, weight than the fact the Distribution Agreement is governed by Washington law.[4]

Verathon nowhere cites any authority to suggest the injunction it seeks could be enforced if contrary to the law or public policy of Canada. Nor can it credibly deny that fact. Verathon itself initiated a proceeding in Canada (***British Columbia Action II***) to enforce the Non-Competition Clause. And, according to Verathon, it did so for purposes of resolving the question of the enforceability in British Canada of relief obtained in this Court. *See* Declaration of Shane D. Colbin, ¶ 9. Verathon's actions are an

---

[4] Verathon takes issue with CAREstream's reliance on *Grammer, Inc. v .Custom Foam Sys. Ltd.*, 482 F. Supp. 2d 853 (E.D. Mich. 2007). The many similarities between the instant case and *Grammer* are discussed at length in CAREstream's motion. Motion at 10. Verathon seeks to distinguish *Grammer* because the parties in that case disputed whether a contractual choice-of-law provision selecting Michigan governed the agreement at issue. As concerns *Colorado River* factor five, it was the absence of a federal law or federal interest that the court found to support declining jurisdiction under factor 5, not the dispute around the choice of law clause: "The fifth factor supports my declining to exercise jurisdiction, as there is no federal law at issue here." As in *Grammer*, there is no issue of federal law in this case.



acknowledgement of the practical reality that a Canadian court will have to address the enforceability of the Non-Competition Clause for Verathon to obtain the relief it seeks.

Finally, Verathon overstates the extent to which its claims are governed by Washington law. The Distribution Agreement's choice-of-law provision applies only to the Distribution Agreement:

> This Agreement will be governed by, and interpreted in accordance with the laws of the State of Washington and the United States of America.

Distribution Agreement § 10.4. Only two of Verathon's six claims arise under the Agreement. Three of Verathon's other four claims sound in tort (Replevin/foreclosure, Conversion, and Tortious Interference) and its final claim arises under Washington statutory law (violation of the Uniform Trade Secrets Act). Notably, all of the alleged torts occurred in Canada. Whether Verathon's tort claims would be governed by Canadian or U.S. law is a question resolved by choice-of-law principles, not the Distribution Agreement. As for the trade secrets claim, as further discussed below, assuming Verathon has a valid claim under Washington law, Verathon could bring that claim in Canada. That few of Verathon's claims are subject to the choice-of-law provision provides further reason for this court to decline jurisdiction.

*Avoiding Piecemeal Litigation (Factor Three) and the Adequacy of the Foreign Proceeding to Protect the Parties' Rights (Factor Six)*. As noted in CAREstream's motion, Verathon could bring the claims it pursues in this case as counterclaims in ***British Columbia Action I***. *See* Motion at 11; King Decl. ¶ 11.[5] Consolidating the parties' claims in Canada would unquestionably avoid piecemeal and duplicative litigation. Jurisdiction of the B.C. Court over the parties cannot seriously be disputed: Verathon has itself filed suit

---

[5] Verathon's argument that it could not obtain relief on its trade secret claim because British Columbia does not have a trade secrets statute overlooks both that a Canadian court could apply Washington law to resolve this claim and Canada's common law protections of trade secrets. *See* King Decl. ¶ 11.



1   in the B.C. Court and, in that proceeding, admitted the B.C. Court has jurisdiction over it.

2   King Decl. ¶ 4, Ex. C.  And the parties' non-exclusive submission to jurisdiction in

3   Washington courts would not defeat a finding of jurisdiction by a Canadian court.  *See*

4   *Grammer*, fn. 7 (non-exclusive forum selection clause did not preclude jurisdiction of

5   Canadian court).

6          Verathon's claims of the deficiencies of the B.C. Court ring hollow.  It has recently

7   availed itself of that forum (by bringing ***British Columbia Action II***).  While certain

8   deadlines in the ***British Columbia Action I*** have been extended pending this motion for

9   reasons of economic and judicial efficiency, the case is ongoing and remains the best forum

10  for consideration of the enforceability of the Non-Enforcement Clause under Canadian law

11  and public policy.

12         **D.     Verathon's application for Rule 11 sanctions should be denied.**

13         Verathon asks this court to impose sanctions on CAREstream based on Verathon's

14  unsupported allegation that CAREstream filed this motion as a delay tactic and its factually

15  incorrect assertions that CAREstream ignored section 10.4 of the Distribution Agreement

16  and mischaracterized legal authority.  Opposition at 20-21.  As explained above, Verathon's

17  allegations are without merit.  Verathon, for its part, in the very filing that lodges these

18  provocative and wholly unwarranted allegations against CAREstream relies on inapposite

19  authority and misrepresents the nature of the proceedings in Canada.  In any event,

20  Verathon's application for Rule 11 sanctions is without merit and this Court should decline

21  Verathon's invitation to award sanctions.[6]

---

22  [6]  Verathon's application for sanctions also is procedurally defective.  Fed. R. Civ. Proc. 11(c)(2) requires that
23  a party wait 21 days after service of a motion for sanctions before filing it with the court.  Verathon has not
     complied with that requirement.  Instead, as an end-run around the 21-day "safe harbor" it asks this Court to
24  impose sanctions on the Court's own initiative pursuant to Fed. R. Civ. Proc. 11(c)(1).  The Ninth Circuit has
     rejected that approach.  In *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772 (2001), the Ninth Circuit held that
25  the twenty-one day "safe harbor" notice provision of 11(c)(2) cannot be waived by treating a party-initiated
     application for sanctions as a motion brought on the court's own initiative.  *See Radcliffe v. Rainbow Const.*
26  *Co.*, 254 F.3d 772 (9th Cir. 2001).

---

DEFENDANT CARESTREAM'S REPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 11



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

## IV. CONCLUSION

2      For the reasons set forth above and in CAREstream's motion, this Court should stay

3   this proceeding pending resolution of the Canadian case.  In the alternative, this Court

4   should dismiss this action on grounds of *forum non conveniens*.  This Court should also

5   decline Verathon's unwarranted invitation to award it sanctions pursuant to Fed. R. Civ.

6   Proc. 11(c).

7   ///

8   ///

9   ///

10  ///

11

12      DATED:  April 29, 2016          **YARMUTH WILSDON PLLC**

13                              By: *s/ Scott T. Wilsdon*
                                Scott T. Wilsdon (WSBA #20608)
14                              John H. Jamnback (WSBA #29872)
                                1420 Fifth Avenue, Suite 1400
15                              Seattle, WA  98101
                                Phone: (206) 516-3800
16                              Fax:    (206) 516-3888
                                Email:  wilsdon@yarmuth.com
17                              Email:  jjamnback @yarmuth.com

18                              *Attorneys for Defendants CAREstream Medical,*
19                              *LTD and CAREstream Medical, ULC*

20

21

22

23

24

25

26

YARMUTH WILSDON PLLC

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this date, I electronically filed the foregoing document with

3

the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4

to the following:

5

Joseph J. Straus
Farron Curry

6

SCHWABE, WILLIAMSON & WYATT, P.C.
Email: jstraus@schwabe.com

7

fcurry@schwabe.com

8

***Attorneys for Plaintiff Verathon Medical, Inc.***

9

10

Dated:  April 29, 2016, at Seattle, Washington.

11

12

*s/Vassie Skoulis*
Vassie Skoulis, Legal Assistant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT CARESTREAM'S REPLY IN SUPPORT
OF MOTION TO STAY OR DISMISS
NO. 2:16-cv-00280-JCC – Page 13

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

902.01 qd0268301 4/29/16